T. Windsor Robinson, Receiver, v. W. T. Dickey et al.

Delivered June 8, 1896.

1  Rescission of Contract—Sale of Real Estate—Fraudulent Representation.

Plaintiff contracted to convey certain lots to a bank, upon its agreement to erect a building thereon, being induced thereto by a false representation made to him by the officers of the bank that it was solvent, and that its shares of stock, to be delivered to him as part consideration, were worth their face value. The contract was never completed by the bank further than its delivery of the stock, and the bank subsequently went into the hands of a receiver. Held, that upon tender of the stock itself to the receiver, plaintiff was entitled to a rescission of the entire contract.

2. Same—Effect of Judgment—Assessments Upon Bank Stock.

Where a judgment rescinds a contract by which bank stock was accepted by plaintiff on false representations of the bank officers as to its value, and directs such stock to be restored to the receiver of the bank, appointed after the execution of the contract, such judgment does not determine the liability of plaintiff for any assessment or charge upon the stock to which he may be subject under the Federal statute, no such issue having been litigated.

Appeal from Wilbarger.   Tried below before Hon. G. A. Brown.

*Frank P. McGhee,* for appellant.—1.   The court erred in overruling defendant's exceptions to plaintiff's petition for that the conveyance of the property mentioned is upon condition precedent; that is the doing of all the things agreed by bank and promised by the bank, before any right to property vested or could vest in the bank, and this is practically an action to rescind a contract without alleging or proving such injury as would justify a court of equity to interfere.   Plaintiff's right to possession being trespass to try title, or forcible entry and detainer—adequate remedies at law.   When a suitor has an adequate remedy at law, equity for rescission of contract should not be allowed.   Railway v. Titterington, 19 S. W. Rep., 472; Weaver v. Vandervanter, 19 S. W. Rep., 889.

2.   Before parties can rescind a contract they must put the other parties in statue quo, and the bank stock being worth 50 cents on the dollar on the 19th of December, 1893, and nothing on day of trial, 50 cents on the dollar ought to have been added to the stock tendered in order for the bank to be in as good condition as it was when it owned the stock itself, or to put it differently: "The stock being worthless on day of trial, it was not necessary to tender the stock at all, but it being worth 50 cents on the dollar when first obtained, the 50 cents on the dollar of such stock ought to have been tendered and not the stock itself."   Smade v. Mann, 14 S. W. Rep. (Ark.), 1095; Dotterer v. Freeman, 14 S. E. Rep., 86, 88 Ga., 479.

*Wells & Bonner,* for appellee.—1.  The court did not err in any part of its judgment for the reasons, that the bank had failed to comply with its part of the written contract as contained in said bond for title; it

never built the house as therein contracted for; it never issued on the bank stock as it agreed to issue; that it was at the date of the filing of this suit insolvent and in the hands of a receiver and wholly incapacitated from carrying out its contract; that at the date of the making of said contract the appellant bank was guilty of gross fraud and misrepresentations as to the value of the bank stock; that at the said date said stock was worthless and said bank was insolvent and should then have been in the hands of a receiver; that appellee was then unaware of these conditions and relied and trusted implicitly in the statements and representations of the president and cashier of said bank. After the breach of the contract, on December 19, 1894, the time which appellant had to complete said contract, appellee made repeated demands of appellant for the possession of the lots, which he refused to comply with and wrongfully withheld the possession of said property using and enjoying the benefit thereof.

2. The decree herein rendered should not be disturbed in any regard, for the position taken by appellant is simply myth. It does not matter, so far as this case is concerned, whether appellee is liable to assessment as stockholder in said bank or not, as that issue is not attempted to be adjudicated, and the judgment herein would not deprive appellant of any right it may have against appellee as a stockholder. Florida Land Co. v. Merrill, 52 Fed. Rep., 77; 2 U. S. C. C. Rep., 629; Prewitt v. Trimble, 17 S. W. Rep., 356.

TARLTON, CHIEF JUSTICE.—Suit by W. T. Dickey against the State National Bank of Vernon and against T. Windsor Robinson, as receiver of the bank, for the cancellation of a contract whereby the plaintiff undertook to convey to the bank certain realty situated in the town of Vernon, Texas, and to recover possession of that realty, and also for the rescission of a contract whereby plaintiff acquired certain stock from the bank. From a judgment in favor of the plaintiff, the receiver appeals to this court.

The judgment appealed from imports a finding by the court, which we adopt, of the substantial truth of the plaintiff's allegations. These are as follows:

On December 19, 1893, the plaintiff, who was the owner of the realty in controversy, consisting of certain lots and parcels of land described in the petition and and situate in the town of Vernon, Texas, executed and delivered a bond or contract, which was promptly recorded, whereby he undertook to convey this property to the defendant the State National Bank of Vernon, Texas, on terms as follows: 1. The transfer by the bank to the plaintiff Dickey of 68 shares of stock of the bank of the face value of $100 each, of which 53 shares were transferred on the execution and delivery of the bond, and 15 shares were to be transferred when Dickey paid to the bank $1000 in money, to be used by it in the construction of a two-story brick building upon a certain described portion of the realty in question. 2. The construction by

the bank on the lot of land described of a two-story brick building, to cost not less than $3000, the first story to be built and occupied by it within twelve months after the execution of the bond. Dickey also bound himself to pay the further sum of $1000 to the bank, $500 when the foundation of the brick building should be laid, and the remainder during the further construction thereof.

The plaintiff was moved to the execution of this instrument and the purchase of the stock by the fact that he desired to secure the erection of the two-story brick building mentioned and the permanent location and operation of the bank on the property; by which means, realty of the plaintiff in the immediate vicinity would be greatly enhanced in value. He was further thereto influenced by the representations made to him by the president and cashier of the bank that it was solvent and that its stock was worth 100 cents on the dollar. The representations relied upon by the plaintiff were false, and he was without means of knowing the true condition of the bank's affairs, other than through the statements of its officers. These statements were made for the false and fraudulent purpose of procuring plaintiff to execute the bond in question, and of inducing him to purchase the shares of stock referred to, which if not then wholly worthless, was of much less than its face value.

Plaintiff has been at all times ready since the execution of the contract to comply with the conditions resting upon him. The defendant bank has in no sense complied with its obligation, except in the issuance and delivery to plaintiff of the 53 shares of stock referred to. It was insolvent at the date of the transaction, and has ever since so remained. It failed on August 18, 1894, and the appellant Robinson was appointed its receiver on September 30, 1894.

The bank took immediate possession of the property described in the bond for title, which was held by it and by the receiver until it was sequestrated by the plaintiff, who instituted this suit on January 9, 1895. On the trial and by his petition the 53 shares of bank stock were produced by the plaintiff and tendered in court for the receiver.

*Opinion.*—We are of opinion. 1. The plaintiff's petition presented a cause of action for the rescission of the contract in question, and for the restitution of the property. The defendants' demurrers were properly overruled.

2. If it be true, as contended by the appellant in his second assignment of error, that the stock at the date of the transaction was worth as much as fifty cents on the dollar, the plaintiff would yet be entitled to a rescission of the contract on tender of the stock itself, without being required to tender its value thus estimated. The false and fraudulent representations entitled him to relief in equity against the entire contract. .Pruitt v. Trimble, 17 S. W. Rep., 356.

3. It is true that the judgment grants the prayer of the plaintiff for the rescission of the contract whereby the 53 shares of bank stock was

acquired, and divests out of the plaintiff all interest and title claimed by him in these shares, which had been by the plaintiff produced, tendered and delivered into court, and directs that the clerk shall deliver the certificates of stock to the receiver on demand. We do not, however, understand that this judgment determines the question of liability on the part of the plaintiff for any assessment or charge to which he may be subject under the Federal statute. Revised Statutes, U. S., sec. 5151. Such an issue does not appear to be here litigated. Under the pleadings and the evidence as interpreted by the court, the plaintiff was entitled to a rescission of this contract, including that feature referring to the acquisition of the certificates of stock. The defendant is in no attitude to complain of the tender of the stock by the plaintiff, nor of the fact that the court enforced this tender. Florida Land & Imp. Co. v. Merrill, 52 Fed. Rep., 77.

The judgment is affirmed.                               *Affirmed.*